**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| TRIDENT MARKETING, INC., and | ) | |
| TRIDENT BEVERAGE, INC. | ) | |
| | ) | |
|     Plaintiffs, | ) | |
| | ) | |
|     v. | ) | Case No. |
| | ) | |
| SMART BEVERAGE, INC., | ) | |
| d/b/a THE THIRSTY COCONUT, | ) | |
| | ) | |
|     Defendant. | ) | |

## COMPLAINT

1.     Plaintiffs Trident Marketing, Inc. and Trident Beverage, Inc. brings this action against Defendant Smart Beverage, Inc. d/b/a/ The Thirsty Coconut for violations of the Texas Uniform Trade Secret Act, unfair competition/common law theft of trade secret, tortious interference with prospective contracts, and breach of contract.

## Parties

2.     Trident Marketing, Inc. ("T Marketing") is a Georgia corporation, with its principal place of business at 23611 Litchfield Bend Lane, Katy, Texas 77449.

3.     Trident Beverage, Inc. ("T Beverage") is a North Carolina corporation, with its principal place of business at 23611 Litchfield Bend Lane, Katy, Texas 77449.

4.     Smart Beverage, Inc. d/b/a/ The Thirsty Coconut is a Missouri corporation with a principal place of business at 15303 Westover Road, Kansas City, Missouri 64147.

5.     Thirsty Coconut Inc. is an S corporation which had or has a principal place of business in Olathe, Kansas. Smart Beverage, Inc. d/b/a The Thirsty Coconut is the successor to Thirsty Coconut Inc. for all purposes relevant this matter.

1

6.      Thirsty Coconut Inc. and Smart Beverage, Inc. d/b/a The Thirsty Coconut will be referred to collectively as "Thirsty Coconut."

## Jurisdiction and Venue

7.      Jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1332 because the citizenship of the parties is diverse and the amount in controversy exceeds $75,000.

8.      This Court also has pendant jurisdiction and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 in that all of T Marketing's claims against Thirsty Coconut are so related that they form part of the same case or controversy under Article III of the United States Constitution.

9.      This Court has specific personal jurisdiction over Thirsty Coconut pursuant to Tex. Civ. Prac. & Rem. Code § 17.042 because Thirsty Coconut entered into the Agreement with T Marketing, a Texas resident, and the Agreement was to be performed in part in Texas, and Thirsty Coconut's actions in Texas breached the Agreement.

10.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) & (3) because the events giving rise to the claims in this action occurred in substantial part in this District (where Thirsty Coconut began to perform and then breached the Agreement, and otherwise transacted business).

## Allegations Common to All Counts

**A.      The School Juice Business--**

11.      T Marketing is a Georgia Corporation and T Beverage is a North Carolina corporation, both with their principal place of business in Texas.  Both companies are involved in the business of supplying fruit juice products, as an alternative to soft drinks, to public schools throughout the United States.  Much like soft drinks, these juices are supplied through dispensing machines which are placed in school cafeterias.

2

12.     The school juice business is handled through bids to school districts and regional purchasing agents for school districts.  In certain areas of Texas, the Region authority for the Texas Department of Education handles the bidding and awarding of these contracts.

13.     These school district contracts are bid through closed bid packages and typically involve a multi-year commitment at a certain price point and with certain service obligations. Since many of these are governmental contracts, the bid applications and packages require a variety of representations about the ownership and operation of the company, including residency requirements and restrictions on persons or companies with criminal backgrounds.  In Texas, these requirements are part of both the Education Code and the Government Code.

**B.      T Marketing and T Beverage- Juice Alive Products**

14.     T Marketing created a line of 100% fruit juice beverage concentrates dispensed through its own machines under the name "Juice Alive." It manufactures, packages and sells Juice Alive products to distributors throughout the United States.  Over the years, T Marketing has created a substantial and significant customer base and reputation for their products and customer service.

15.     T Marketing generally enters into agreements with distributors to allow them to submit bids to school districts and school purchasing agents to supply Juice Alive juice products dispensed through branded Juice Alive dispensing machines.  As a manufacturer, T Marketing makes its money by selling the Juice Alive products to distributors.

16.     T Beverage is one of the distributors of Juice Alive juice products and solicits business and submits bids for placement of Juice Alive dispensing machines in school districts throughout Texas and the Gulf Coast States.

**C.      Thirsty Coconut Agrees to Act as Distributor for Juice Alive**

17.      The Defendant Smart Beverage, Inc. d/b/a Thirsty Coconut is another distributor involved in the school juice business.  Until the events made the basis of this suit, Thirsty Coconut's business was in Missouri and the Midwest.  As discussed further at length below, Thirsty Coconut had an agreement with T Marketing to distribute Juice Alive products using Juice Alive dispensing machines.  *See* Ex. 1 attached hereto.

18.      Thirsty Coconut sought to distribute T Marketing's products, and the parties entered the Agreement on October 8, 2014.

19.      Thirsty Coconut's President, Luke Einsel, signed the Agreement on Thirsty Coconut's behalf. The Agreement was effective as of October 8, 2014.

20.      Under the Agreement, T Marketing granted Thirsty Coconut the license and privilege to sell and distribute T Marketing's product, namely its 100% fruit juice beverage concentrates dispensed under the name "Juice Alive."

21.      The Agreement defines "Product" as "a line of 100% fruit juice beverage concentrates dispensed under the name 'Juice Alive.'" Ex. 1, at 1.

22.      Thirsty Coconut's compensation under the Agreement consisted of the difference between its purchase price paid to T Marketing for Juice Alive and the selling price Thirsty Coconut received from sales to its own customers.

23.      The Agreement states it "shall be deemed to have commenced on the date of this Agreement [i.e. October 8, 2014] and shall continue for an initial term of five (5) years. Unless either party gives sixty (90) days [sic] advance written notice of its intent to not extend this Agreement, the Agreement shall automatically renew at the end of the initial term or any subsequent renewal term for a period of one (1) year each." Ex. 1, § 2.

**D.      Thirsty Coconut Agrees to Not Compete with T Marketing's Product.**

24.      In the Agreement, Thirsty Coconut agreed "not to promote or distribute products manufactured by itself or others that are substantially the same as the Product in composition[.]" Ex. 1, § 3.3.

25.      Thirsty Coconut further agreed "not [to] use products manufactured by itself or others in dispensing machines specifically labeled with the Product's name or marks identifying the Product." *Id.*

26.      As of October 8, 2019, neither party had given "advance written notice of its intent to not extend [the] Agreement" and so the Agreement automatically renewed as of that date for a period of one (1) year to end on October 8, 2020.

**E.      Charles Peoples- Employee of T Marketing and T Beverage**

27.      Charles Peoples ("Peoples") was an employee of T Marketing and T Beverage for a number of years.  As part of his duties, Peoples solicited, priced and submitted bids for Juice Alive products to school districts and purchasing agents.[12]

28.      Peoples' territory was in Texas. His territory was a geographic area that included Houston, Southwest along the Gulf of Mexico to Brownsville, then North to San Antonio, further North to Dallas/Fort Worth, and South back to Houston and everything in between.

---

[1] In early 2020, Ronnoco Coffee, LLC d/b/a Ronnoco Beverage Solutions ("Ronnoco"), acquired a majority interest in T Marketing and T Beverage. At the time of this transaction, several of T Marketing and T Beverage's employees were brought onto Ronnoco's payroll, including Peoples. These employees continued to work for T Marketing and T Beverage in the same roles as before Ronnoco's acquisition.

[2] Effective March 26, 2020, Peoples accepted an offer of employment with Ronnoco which specified he would be in the position of Territory Manager with both Ronnoco and T Marketing. Ex. 2.

29.     In his position, Peoples had access to confidential information pertaining to T Marketing and T Beverage's customers and products. Because of Peoples' direct involvement in the expansion of T Marketing and T Beverage's sales within his territory, he participated in the creation of T Marketing and T Beverage's trade secrets involving those customers within his territory. [3]

30.     As a Territory Manager for T Marketing and T Beverage, Peoples was responsible for bidding on and performing large multiyear state contracts for school buying cooperatives. Peoples was familiar with the cooperatives that were out for bid, the dates by which the bids must be completed, the procedures required for a new bidder to gain access to these bids, and, most importantly, T Beverage's pricing on these bids.

31.     During his employment with T Marketing and T Beverage, Peoples acquired significant confidential and proprietary information and trade secrets of T Marketing and T Beverage, including without limitation: (a) access and knowledge concerning T Marketing and T Beverage's information relating to customers within his territory; (b) access and knowledge regarding T Marketing and T Beverage's pricing overall and to specific customers; (c) access and knowledge regarding T Marketing and T Beverage's product lines; and (d) access and knowledge regarding the specific requirements, specifications and purchases of customers within his territory.

32.     Peoples continued to be employed by Ronnoco/ T Marketing until May 20, 2020, when his employment with Ronnoco/ T Marketing ended.

33.     On information and belief, Thirsty Coconut formally hired Peoples sometime after May 20, 2020.

---

[3] Given his extensive access to confidential information, Ronnoco required as a condition of his employment that Peoples execute a Fair Competition Agreement.

**F.      Thirsty Coconut Uses Peoples to Unfairly Compete With Plaintiffs**

34.      Shortly after May 20, 2020, Plaintiffs discovered that Peoples helped Thirsty Coconut compete for the same state bid contracts that Peoples completed and submitted for Plaintiffs before leaving his employment with Plaintiffs. On information and belief, Thirsty Coconut slightly underbid the bids he had submitted for Plaintiffs for those same contracts. Certainly, Peoples was provided the opportunity by the purchasing agents to provide a bid which could have matched the prices of Thirsty Coconut, prior to his leaving employment and prior to the bid being awarded.

35.      Unbeknownst to Plaintiffs, beginning at the latest in April, 2020, and possibly earlier, Thirsty Coconut began using Peoples to secretly compete with Plaintiffs for contracts.

36.      On April 16, 2020, Thirsty Coconut submitted a bid to the TEXAS 20 Purchasing Cooperative on its RFP 3016 Specialty/Beverages. *See* Ex. 3 ("the Region 20 bid").

37.      The Region 20 bid submitted by Thirsty Coconut sought to perform during a term of July 15, 2020 through July 14, 2021, with the option to extend up to two (2) additional one (1) year periods, or through July 14, 2023. *Id.*

38.      Thus, the Thirsty Coconut bid to Region 20 was submitted roughly five (5) weeks prior to Charles Peoples' termination from T Marketing.

39.      Further, the Thirsty Coconut bid to Region 20 was submitted roughly six (6) weeks before Luke Einsel emailed T Marketing to announce he would not renew the Agreement for an additional term to start in October, 2020.

40.      Thirsty Coconut claimed "Texas Resident Bidder Status" on the Region 20 bid. *Id*.

41.      The address on the Thirsty Coconut bid to Region 20 is the home address of Charles Peoples in Katy, Texas.  *Id.*

42.     The Thirsty Coconut bid to Region 20 was submitted while Charles People was still working for and collecting a paycheck from Plaintiffs. Peoples had detailed knowledge of the pricing Plaintiffs submitted on this bid, as Peoples was the representative that completed the bid. Subsequently, Thirsty Coconut slightly underbid Plaintiffs and Thirsty Coconut was awarded this bid.

43.     The Thirsty Coconut bid to Region 20 was submitted while T Marketing was still actively promoting Thirsty Coconut and sharing information with it.

44.     Thirsty Coconut also submitted a bid to the Harris County Department of Education- Choice Partners Cooperative in violation of the Agreement.  *See* Ex. 4 ("the Choice Partners Bid").  This bid also used Charles Peoples' home address as the "certified" basis for its "resident" bidder status and made other misrepresentations in the Choice Partners Bid referenced below.  These misrepresentations were designed to provide Thirsty Coconut with an unfair advantage in the bidding process.

**F.      Thirsty Coconut Fraudulently Certifies that its Owner Has Not Been Convicted of a Felony.**

45.     In a section entitled "Felony Conviction Notification", the Region 20 bid explains:

> Texas Education Code, Section 44.034, Notification of Criminal History, Subsection (a) states "a person or business entity that enters into a contract with a school district must give advance notice to the district if the person or an owner or operator of the business entity has been convicted of a felony. The notice must include a general description of the conduct resulting in the conviction of a felony. "Subsection (b) states "a school district may terminate a contract with a person or business entity if the district determines that the person or business entity failed to give notice as required by Subsection (a) or misrepresented the conduct resulting in the conviction. The district must compensate the person or business entity for services performed before the termination of the contract." This notice is not required of a Publicly-held Corporation.

*See* Ex. 3.

46.     In the Region 20 bid, Thirsty Coconut certified the following: "My firm is not owned nor operated by anyone who has been convicted of a felony[.]" *Id.*

47.     This statement was not true. Luke Einsel, who owns or at least partially owns Thirsty Coconut, was convicted of two felonies in Nevada in 2006. On May 18, 2006, Einsel pled guilty to felony charges of Grand Larceny of a Firearm and Robbery and was "adjudged guilty" of both felony charges. *See* Ex. 5.

48.     Similarly, in the Choice Partners Bid, Luke Einsel himself signed a certification to the Harris County Department of Education that his "Firm is not owned nor operated by anyone who has been convicted of a felony."  *See* Ex. 4, p. 22.

## COUNT I: TEXAS UNIFORM TRADE SECRET ACT
### (TEX. CIV. PRAC. & REM. CODE 134A.001 *et seq*)

49.     Plaintiffs incorporate by reference paragraphs 1 through 48 of its Complaint as though fully set forth herein.

50.     Each of the Plaintiffs herein owned certain trade secrets related to their business in Texas, including but not limited to: (a) access and knowledge concerning T Marketing and T Beverage's information relating to customers within this territory; (b) access and knowledge regarding T Marketing and T Beverage's pricing overall and to specific customers; (c) access and knowledge regarding T Marketing and T Beverage's product lines; and (d) access and knowledge regarding the specific requirements, specifications and purchases of customers within this territory.

51.     Defendant misappropriated these trade secrets by way of the acts set out herein, which were disclosed without consent and with knowledge of the impropriety.

52.     Plaintiffs suffered injury, including but not limited to the loss of valuable contracts in Texas.

53.     Plaintiffs seek all available remedies for such violation, including but not limited to any of its actual loss, unjust enrichment to Defendant, disgorgement of Defendant's profits, exemplary damages, and including prohibitive injunctive relief upon application.  In addition, Plaintiffs seek their reasonable attorney' fees and costs in bringing this action, and pre-judgment and post-judgment interest as allowed by law.

**COUNT II:  UNFAIR COMPETITION AND/OR**
**COMMON LAW TRADE SECRET MISAPPROPRIATION**

54.     Plaintiffs incorporate by reference paragraphs 1 through 48 of its Complaint as though fully set forth herein.

55.     Each of the Plaintiffs herein owned certain trade secrets related to their business in Texas, including but not limited to: (a) access and knowledge concerning T Marketing and T Beverage's information relating to customers within this territory; (b) access and knowledge regarding T Marketing and T Beverage's pricing overall and to specific customers; (c) access and knowledge regarding T Marketing and T Beverage's product lines; and (d) access and knowledge regarding the specific requirements, specifications and purchases of customers within this territory.

56.     Defendant used these trade secrets in violation of a confidential contractual relationship with Plaintiff and/or by improper mean as set out more fully herein.

57.     Plaintiffs suffered injury, including but not limited to the loss of valuable contracts in Texas.

58.     Plaintiffs seek all available remedies for such violation, including but not limited to any of its actual damages, including the loss of the benefit of these contracts, damage to Plaintiffs' existing and future business relationships and contracts with its customers, loss of goodwill, loss of customer contacts, unfair competition, loss of confidential business information, loss of referral sources, damage to or loss of Plaintiffs' reputation, and loss of competitive

advantage; unjust enrichment to Defendant including the value of the contracts and contacts wrongfully acquired, exemplary damages, and prohibitive injunctive relief upon application. In addition, Plaintiffs seek their costs in bringing this action, and pre-judgment and post-judgment interest as allowed by law.

## COUNT III: TORTIOUS INTERFERENCE
## WITH PROSPECTIVE CONTRACTUAL RELATIONS

59.     Plaintiffs incorporate by reference paragraphs 1 through 48 of its Complaint as though fully set forth herein.

60.     There was a reasonable probability that T Beverage would have entered into a business relationship with entities such as Region 20 and Choice Partners but for Thirsty Coconut's tortious actions.

61.     Thirsty Coconut intentionally interfered with these prospective contractual relationships by committing fraud in the application for the bids with Region 20 and/or Choice Partners. Specifically, Thirsty Coconut knowingly misrepresented that Charles Peoples was their local Texas representative and that their bid complied with the requirements of Texas Education Code, Section 44.034, at minimum.

62.     Further and in the alternative, by competing against T Beverage in violation of the Distribution Agreement, and by using T Beverage's own employee, Peoples, to underbid T Beverage on third party contracts, Thirsty Coconut committed an intentional, malicious intervention or an independently tortious or unlawful act with a conscious desire to prevent T Beverage's relationship with entities such as Region 20 and Choice Partners from occurring, or with knowledge that its interference was certain or substantially likely to occur as a result of its conduct.

63.     T Beverage suffered actual harm and/or damages as a result of Thirsty Coconut's tortious interference, in that the actions of Thirsty Coconut prevented T Beverage's relationship from occurring, and T Beverage suffered the loss of the benefit of these contracts, damage to T Beverage's existing and future business relationships and contracts with its customers, loss of goodwill, loss of customer contacts, unfair competition, loss of confidential business information, loss of referral sources, damage to or loss of T Beverage's reputation, and loss of competitive advantage.  In addition, T Beverage seeks exemplary damages, its costs of court and pre-judgment and post-judgment interest as allowed by law.

64.     T Marketing suffered actual harm and/or damages as a result of Thirsty Coconut's tortious interference, in that the actions of Thirst Coconut prevented T Marketing from being the supplier for the winning distributor for these contracts, and T Marketing suffered the loss of the benefit of these contracts, damage to T Marketing's existing and future business relationships and contracts with its customers, loss of goodwill, loss of customer contacts, unfair competition, loss of confidential business information, loss of referral sources, damage to or loss of T Marketing's reputation, and loss of competitive advantage. In addition, T Beverage seeks exemplary damages, its costs of court and pre-judgment and post-judgment interest as allowed by law.

## COUNT IV: BREACH OF CONTRACT

65.     T Marketing incorporates by reference paragraphs 1 through 48 of its Complaint as though fully set forth herein.

66.     A valid contract existed between T Marketing and Thirsty Coconut in the form of the Distribution Agreement. Ex. 1.

67.     The Agreement was, and is, supported by sufficient consideration as evidenced by T Marketing's continued grant to Thirsty Coconut of the license and privilege to sell and distribute

branded Juice Alive products, to use branded Juice Alive dispensing machines, and to be compensated for doing so.

68.     Thirsty Coconut agreed "not to promote or not to promote or distribute products manufactured by itself or others that are substantially the same as the Product in composition[.]" Ex. 1, § 3.3.

69.     Thirsty Coconut further agreed "not [to] use products manufactured by itself or others in dispensing machines specifically labeled with the Product's name or marks identifying the Product." *Id.*

70.     Despite T Marketing's performance and willingness to perform in compliance with the Agreement, Thirsty Coconut breached the Agreement.

71.     Thirsty Coconut breached the Agreement by, among other things, submitting bids to Region 20 and/or Choice Products and/or SFE-Southwest Food Service,

72.     While the full extent of Thirsty Coconut's actions and the damages caused thereby are presently unknown, Thirsty Coconut's breach of the Agreement has caused and will continue to cause damages to T Marketing, including without limitation jeopardy to and/or loss of T Marketing's existing and future business relationships and contracts with its customers, loss of goodwill, loss of customer contacts, unfair competition, loss of confidential business information, loss of referral sources, damage to or loss of T Marketing's reputation, and loss of competitive advantage.

73.     T Marketing seeks all available remedies for this breach, including but not limited to its actual damages for the loss of this confidential information, including without limitation jeopardy to and/or loss of T Marketing's existing and future business relationships and contracts with its customers, loss of goodwill, loss of customer contacts, unfair competition, loss of

confidential business information, loss of referral sources, damage to or loss of T Marketing's reputation, and loss of competitive advantage.  In addition, Plaintiffs seek their reasonable attorney' fees and costs in bringing this action, and pre-judgment and post-judgment interest as allowed by law.

## **PRAYER FOR RELIEF**

74.      WHEREFORE, Plaintiff Trident Marketing, Inc. and Trident Beverage, Inc. pray for judgment against Defendant Smart Beverage Inc. d/b/a/ The Thirsty Coconut as follows:

(a)      Monetary damages in an amount in excess of $75,000.00;

(b)      Plaintiff's reasonable and necessary attorneys' fees and costs of court in bringing this action;

(c)      Exemplary damages, by statute or common law, for the activity set out herein;

(d)      Pre- and post-judgment interest at the maximum rate permitted by law; and

(e)      Such other and further relief as the Court deems just and proper.

Dated:  October 7, 2020                    Respectfully submitted,

                                      WADLER PERCHES HUNDL & KERLICK
                                      Attorneys for Plaintiffs

                                      BY:_____
                                         I. Ray Kerlick
                                         State Bar No.:  00791017
                                         Federal ID: 18438
                                         101 West Burleson Street
                                         Wharton, Texas  77488
                                         Telephone:  (979) 532-3871
                                         Facsimile:  (979) 532-3508
                                         E-mail:  rkerlick@wphk-law.com